# ATTACHMENT A

**U.S. Department of Justice**

*United States Attorney*
*District of Maine*

| | |
|---|---|
| *Margaret Chase Smith Federal Building* | *(207) 945-0373* |
| *202 Harlow Street, Room 10100* | *TTY (207) 945-0307* |
| *Bangor, ME  04401* | *Fax (207) 945-0319* |
| | *www.usdoj.gov/usao/me* |

August 31, 2022

Honorable Joseph N. Laplante
United States District Judge
United States District Court
55 Pleasant Street, Room 110
Concord, NH 03301-3941

**Re: <u>United States of America v. Tyson Cote</u>**
     **Crim. No. 2:22-cr-00026-JNL**

Dear Judge Laplante:

The Government previously filed a *Response in Opposition to Defendant's Motion to Suppress* (ECF No. 51), a *Response in Opposition to Defendant's Motion to Suppress and Motion for Franks Hearing* (ECF No. 52), and a *Response in Opposition to Defendant's Motion for Early Disclosure of Jencks Materials* (ECF No. 53) in the above-captioned matter. At the time the Government filed its *Responses*, undersigned counsel believed the statements contained therein to be true and accurate based on the evidence then in the possession of the United States Attorney's Office for the District of Maine.

However, undersigned counsel has since received additional materials from the United States Marshals Service, including screen captures of three text-message conversations. The conversations are described as:

1) Text String 1: A text-message conversation involving Enforcement Supervisor Tenuta, DUSM Belanger, DUSM Guay, Sergeant (formerly-Detective) Gagnon of the Auburn Police Department, Officer Brian Rose of the Lewiston Police Department, DUSM Crawford, Taskforce Officer White, and Taskforce Officer Yebra.

2) Text String 2: A text-message conversation involving Enforcement Supervisor Tenuta, DUSM Belanger, DUSM Guay, Sergeant Gagnon, Taskforce Officer White, Officer Rose, DUSM Crawford, Taskforce Officer Yebra, and Taskforce Officer Alexander.

3) Text String 3: A text-message conversation involving DUSM Guay and Sergeant Gagnon.

Page **1** of **6**

Following review of those additional materials, undersigned counsel writes to clarify and/or correct statements and assertions made in the Government's *Responses*.[1]

## I. Number of sources who provided information to the Maine Violent Offenders Taskforce:

In its *Response in Opposition to Defendant's Motion to Suppress and Motion for Franks Hearing*, the Government stated:

> In his affidavit, Detective Gagnon noted that the USMS had received information from a source that 'Davenport is staying at' the Residence, as well as information from another source that 'Davenport had texted them and stated he was at 37 Whitney Street.' . . . Upon information and belief, the USMS had only received information regarding Davenport's whereabouts—including text messages—from SOI-2.

(ECF No. 52 at 4.) The Government stated that Detective Gagnon's affidavit erroneously identified the number of sources of information and that the U.S. Marshals Service only received information from one—rather than two—sources. (Id. at 16-18.)

In an email previously made available for defense counsel's review, Sergeant Gagnon indicated his understanding that someone's mother had also provided information to the U.S. Marshals, though he could not recall who that individual would have been.

Upon review of the text-message conversations in Text String 1 and Text String 2, it appears the Government's statements regarding the number of sources were incorrect. DUSM Guay sent the following message in both text strings on October 21, 2021, at 5:02 p.m. and 5:21 p.m., respectively: "Background: a subject was observed entering the dwelling that matched the description of Demetrius Davenport. We have received information from two sources that Davenport texted that he wanted to see [redacted] prior to being arrested and gave the address of 37 Whitney." However, DUSM Guay messaged Detective Gagnon in Text String 3 at 4:49 p.m. regarding a third individual. DUSM Guay stated, "Travis [Crawford] was also told by [redacted—another individual related to SOI-2 and identified in the message by their relationship to SOI-2[2]] that Lambo texted and said he was at 37 Whitney." Upon further inquiry, Enforcement Supervisor Tenuta informed the Government—in summary—that DUSM Crawford reports he may have spoken with the third individual but does not specifically recall doing so.

## II. Agents' anticipation of potential state or federal charges against occupants of the Residence:

---

[1] The Government has provided copies of the three text-message strings to the defendant, through counsel, in redacted form to protect the identities of sources of information referenced therein.
[2] The Government understands that the third individual is also related to SOI-1.

Page **2** of 6

In its *Response in Opposition to Defendant's Motion to Suppress*, the Government indicated that Detective Gagnon and the Maine Violent Offenders Taskforce agents anticipated federal and state proceedings against Mr. Davenport and "had no reason to anticipate any prosecution—state or federal—against the occupants of the Residence." (ECF No. 51 at 10.)

Upon review of the text messages in Text String 1 and Text String 2, the Government's statement was incorrect. Agents discussed the possibility of arresting or summonsing occupants of the Residence for hindering apprehension if Mr. Davenport was located inside.

DUSM Guay sent a text message in Text String 1 at 5:06 p.m. on October 21, 2021, stating, "Plan is to Course or [sic] Action 1 1) secure rear and sides of building 2) rest of team approaches front door and announce, hopefully Davenport will come to door, if not COA 2, 1) APD Gagnon will get SW signed and we make entry. 2) Occupants get arrested or/ summonses for Hindering Apprehension if Davenport is located inside." DUSM Guay sent the same message in Text String 2 at 5:22 p.m.

### III. DUSM Guay's observation of a male matching Mr. Davenport's description:

In its *Response in Opposition to Defendant's Motion to Suppress and Motion for Franks Hearing*, the Government indicated that DUSM Guay "observed a male matching Davenport's description enter the Residence and did not observe the male exit" in the afternoon on October 21, 2021. (ECF No. 52 at 3.)

Text String 1 contained additional detail, with DUSM Guay messaging at 5:12 p.m., "I haven't see. [sic] Anyone leave." At 5:15 p.m., DUSM Guay messaged, "To clarify I haven't seen anyone leaving residence using the front Whitney St side."

In Text String 3, DUSM Guay messaged Detective Gagnon at 4:48 p.m. stating, "Roger my observations are at approximately 1330hrs, I observed a [sic] African American male, matching the description by height, weight, race and dreadlocks, wearing a white T-Shirt and a bag enter 37 Whitney."

### IV. Text messages from Detective Gagnon's contact with SOI-1 and information regarding SOI-1's basis of knowledge:

In its *Response in Opposition to Defendant's Motion to Suppress and Motion for Franks Hearing*, the Government indicated that, "[u]pon information and belief, Detective Gagnon spoke with SOI-1 by phone, and SOI-1 did not identify the source or basis of their knowledge about Davenport's whereabouts to Detective Gagnon." (ECF No. 52 at 3; see also id. at 19.) Additionally, the Government indicated in its *Response in Opposition to Defendant's Motion for Early Disclosure of Jencks Materials* that it had informed defense counsel that "Sergeant Gagnon does not have recordings of SOI-1 providing information regarding the whereabouts of Demetrius Davenport." (ECF No. 53 at 2.)

Page **3** of **6**

Upon review of the text messages in Text String 3, the Government's statements were incorrect. It appears that Detective Gagnon exchanged text messages with SOI-1. On October 20, 2021, at 7:55 p.m., Detective Gagnon sent DUSM Guay a screen capture of part of a text-message conversation apparently between Detective Gagnon and SOI-1. That screen capture includes statements that appear to be from SOI-1 as follows:

- ". . . [Subject 1's first name]'s while they [sic] marshals were searching my [redacted] house and I'm being told he's staying at [Subject 1's first name]'s."
- "[Misspelling of Subject 1's last name] or something."
- "Her roommate is telling me all this."[3]

At 8:10 p.m. on October 20, 2021, Detective Gagnon sent DUSM Guay an additional screen capture of part of a conversation apparently between Detective Gagnon and SOI-1. That screen capture includes Detective Gagnon asking "Do you know where [Subject 1's first name] is staying now," with SOI-1 responding "I know it's by Turner st when I talk to my [redacted] in the morning I can . . . ."

### V. Source of information regarding Davenport texting he "was at 37 Whitney Street":

In its *Response in Opposition to Defendant's Motion to Suppress and Motion for Franks Hearing*, the Government referenced text messages exchanged at 4:32 p.m. between DUSM Crawford and SOI-2 regarding Mr. Davenport's location. (ECF No. 52 at 15.) The Government then indicated that Detective Gagnon's affidavit stated, "'The U.S. Marshalls [sic] also received information from a third source that Demetrius texted them and stated he was at 37 Whitney Street,'" and the Government observed that Detective Gagnon did not suggest that Davenport had texted that he "was currently" or "is" at the Residence. (Id.)

At the time of the filing of its *Responses,* the Government understood that the reference to a third source was in error and that Detective Gagnon was referring instead to information provided by SOI-2. However, upon review of the text messages in Text String 3, DUSM Guay messaged Detective Gagnon at 4:49 p.m. stating, "Travis [Crawford] was also told by [redacted—another individual related to SOI-2 and identified in the message by their relationship to SOI-2] that Lambo texted and said he was at 37 Whitney." Therefore, it appears the Government incorrectly attributed the information in the affidavit "that Demetrius texted them and stated he was at 37 Whitney Street," to the text exchange between DUSM Crawford and SOI-2.

### VI. Corrections to reformed factual statement in the affidavit:

In its *Response in Opposition to Defendant's Motion to Suppress and Motion for Franks Hearing,* the Government offered a reformed factual statement for Detective Gagnon's affidavit.

---

[3] It is not entirely clear from the content of the screen capture alone whether SOI-1 was saying they learned this information from SOI-2's roommate or from Subject 1's roommate. For purposes of the reformed affidavit, the Government assumes—based on context—that SOI-1 learned this information from SOI-2's roommate.

(ECF No. 52 at 18-19.) Based upon the corrections and clarifications identified above, a reformed factual statement in the affidavit would read as follows:

1. On 10/4/2021, Auburn Police responded to a domestic violence assault complaint. The suspect was identified as Demetrius Davenport and he had left/fled prior to police arrival. Demetrius is on federal probation for previous firearms charges. A warrant was issued for Demetrius by the State of Maine for a domestic violence assault charge with priors making this a felony warrant. The arrest warrant was issued on 10/6/2021.

2. Demetrius subsequently had another arrest warrant issued for him by the federal court for violation of federal probation. That warrant was verified and issued on 10/8/2021.

3. On 10/20/2021, I received information from a source of information ("SOI-1") that Demetrius was staying at [Subject 1's] mother "Jill's" house located "near Turner Street." I know Jilliann Choiniere to reside at 37 Whitney Street in Auburn, which is the next street over from Turner Street.
    a. SOI-1 stated that they were receiving information from the roommate of SOI-1's relative, SOI-2.
    b. I had contact with SOI-1 during an investigation several years ago while I was assigned to another agency. SOI-1 was identified as a drug addict/user in that investigation and was not charged with a crime, though SOI-1's significant other was convicted of a crime. I am not aware of information suggesting SOI-1 was under the influence or impaired when they provided this information.

4. In the afternoon on 10/21/2021, Deputy U.S. Marshal Ryan Guay observed a male matching the description of Demetrius enter the residence at 37 Whitney Street in Auburn and he has not exited.

5. On 10/21/2021, U.S. Marshals asked a source of information ("SOI-2") if they knew where Demetrius was at that time. At 4:33 p.m., SOI-2 responded, "I have the address of 37 Whitney st but I didn't reply for a little too long because I was on the phone with you and then my mom and now he won't answer me." SOI-2 is related to SOI-1.

6. The U.S. Marshals also received information from a third source—also related to SOI-1 and SOI-2—that Demetrius texted and said he was at 37 Whitney Street.

## VII. Conclusion

Based upon receipt and review of the additional materials identified above, undersigned counsel writes to clarify and/or correct statements and assertions made in the Government's *Responses*. Undersigned counsel apologizes to the Court, the defendant, and defense counsel for these errors in the Government's *Responses*. Should the Court prefer undersigned counsel correct these errors on the record at the September 8, 2022 hearing and/or by submitting formal motions or a different form of pleading, undersigned counsel will certainly do so.

Very truly yours,

DARCIE N. MCELWEE
UNITED STATES ATTORNEY
/s/ Nicholas Heimbach
Nicholas Heimbach
Assistant U.S. Attorney
U.S. Attorney's Office
202 Harlow Street, Suite 111
Bangor, ME 04401
(207) 945-0373
Nicholas.heimbach@usdoj.gov

Cc: Grainne Dunne, Esquire

Page **6** of **6**